UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOUGLAS G. RICHARDSON,

                         Plaintiff,

         - against -

ADOBE, INC.,

                      Defendant.

**MEMORANDUM
OPINION & ORDER**

22 Civ. 7114 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this action, Plaintiff Douglas G. Richardson brings claims against Defendant

Adobe, Inc. for direct, indirect, and willful patent infringement of U.S. Patent Nos. 7,388,587

("the '587 Patent"), 7,629,977 ("the '977 Patent"), 8,035,644 ("the '644 Patent"), 11,232,768

("the '768 Patent") and 11,263,998 ("the '998 Patent") (collectively, the "patents-in-suit") under

35 U.S.C. §§ 271(a), (b), and 284.

       Adobe has moved to dismiss the First Amended Complaint ("FAC") pursuant to

Fed. R. Civ. P. 12(b)(6).  See Dkt. No. 32.  Adobe argues that Richardson has not pled facts

sufficient to establish infringement for purposes of the asserted direct, indirect, and willful

infringement claims.  Adobe also contends that Richardson has not adequately pled pre-suit

knowledge of the patents-in-suit for purposes of indirect and willful infringement.

       For the reasons stated below, Adobe's motion to dismiss will be granted in part

and denied in part.[1]

---

[1]  Richardson has moved for permission to file an amended opposition brief correcting certain
citations.  That motion (Dkt. No. 39) will be granted.

## BACKGROUND[2]

### I.    FACTS

This is a patent infringement case brought under 35 U.S.C. § 271 et seq.  (FAC (Dkt. No. 23) ¶ 3)

Plaintiff Richardson is a professional photographer and owns several patents related to "'Cinegif[s,]'" which are "image[s] having an isolated area of motion that draws the viewer's eye to a particular area of the image."  (Id. ¶¶ 7-10)  Defendant Adobe, Inc. is a California corporation that sells software, including Adobe Premiere Pro and Adobe After Effects.  (Id. ¶¶ 2, 21, 22)

In 2005, Richardson invented and began obtaining patents for Cinegif.  (Id. ¶ 10) Cinegif has been used by advertisers across several industries "to attract customers and increase click-through rates."  (Id. ¶ 13)  The FAC alleges that Richardson has "provided his Cinegifs for Maserati of Austin, Keller Williams Realty, Century 21 Realty, John Deere, Kraft, Starwood Resorts, Chick-fil-A, and Deep Eddy Vodka."  (Id. ¶ 14)

Richardson alleges that, since at least early 2017, Adobe "has been [directly] infringing on [Richardson]'s patents-in-suit by marketing and selling images that include what Adobe refers to as a 'Cinemagraph.'"  (Id. ¶ 15-18)  Adobe also "actively induces others to infringe the method claims of the patents-in-suit (the 'Accused Methods') by promoting infringement of the Accused Methods on YouTube and other social media."  (Id. ¶ 20)  Adobe has created and offered video tutorials that "give[] step by step instructions, encouragement and direction on how to create a Cinemagraph."  These tutorials "use and infringe [Richardson's]

---

[2]  Unless otherwise noted, the following facts are drawn from the FAC and its exhibits, and are presumed true for purposes of resolving Defendant's motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

patented technology." (Id. ¶¶ 24)  For example, Adobe has actively marketed a YouTube tutorial that "describes how to make a Cinemagraph using Adobe Premiere Pro." (Id. ¶ 21)  "Adobe [also] markets its Adobe After Effects software in a YouTube tutorial to promote making a Cinemagraph using the After Effects software." (Id. ¶ 22)  Richardson alleges that these advertisements induce users "to infringe the patents-in-suit." (Id.)

The FAC further alleges that Adobe's infringing activities were committed with knowledge of his patents.  According to Richardson, the '587 patent "was brought to the attention of Adobe's patent attorneys, [because it was] cited by the US Patent Examiner during [Adobe's] prosecution of [an unrelated Adobe patent]." (Id. ¶ 43)  Attached as an exhibit to the FAC is a "Notice of References Cited by the Examiner" that addresses Adobe's patent application.  This notice lists the '587 Patent among other patents cited by the examiner.  (Notice of References (Dkt. No. 23-11) at 4)  The FAC further alleges that the other four patents-in-suit are "part of the same patent family as the '587 patent," and that all of these patents claim "priority to the same provisional patent application . . . filed on Apr. 12, 2005." (Id. ¶ 59)

## II.    PLAINTIFF'S PATENTS

### A.    '587 Patent

Count One of the FAC alleges indirect infringement of claims 1, 3, 4, 5, and 6 of the '587 Patent.  (Id. ¶¶ 34-48)  The '587 Patent is "entitled 'Method for Embedding Animation in Electronic Mail And Websites,'" and "relate[s] to improved methods and computing products for creating animations for efficient electronic communications." (Id. ¶¶ 36-37)

The '587 Patent consists of two independent claims and several dependent claims that refer to and incorporate the independent claims and add more detail to them.  (See id., Ex. 1 ('587 Patent) (Dkt. No. 23-1) at 1-16)[3]  As relevant here, independent claim 1 concerns:

> A method for providing animation in an electronic message, comprising:
>
> > capturing a first image of a scene from a particular location using a defined set of photographic parameters;
> >
> > capturing a plurality of images in a sequential order from the particular location using the defined set of photo graphic parameters;
> >
> > defining a sensitivity level;
> >
> > identifying portions of the sequential images that differ from the first image to a degree corresponding to the sensitivity level;
> >
> > cutting the identified portions of the sequential images to produce cut images;
> >
> > superimposing, the cut images onto the first image as layers such that each cut image is displayed in the first image in a position corresponding to the position of the cut image in the corresponding sequential image and displayed in a time sequence corresponding to the timing between corresponding sequential images and the first image; and
> >
> > saving the first image and the layers as a single web enabled graphic image file.

(Id. at 15)

## B.    '977 Patent

Count Two of the FAC alleges indirect infringement of claims 1, 2, 3, 4, 5, 6, and 8 of the '977 Patent.  (Id. ¶¶ 49-64)  The '977 Patent is "entitled 'Embedding Animation in Electronic Mail and Websites,'" and "relate[s] to improved methods and computing products for

---

[3]  Except as to deposition transcripts and patents, the page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.  With respect to patents, the Court cites to the internal sheet, figure, and column numbers.  As to deposition transcripts, the Court cites to the pagination assigned by the court reporter.

creating animations for efficient electronic communications." (Id. ¶¶ 51-52) The '977 Patent "is part of the same patent family as the '587 patent," as both "the '977 patent and the '587 patent claim priority to the same provisional application No. 60/670,402, filed on Apr. 12, 2005; and the '587 patent is a continuation-in-part of the non-provisional Application No.: 11/403,374 filed on April 12, 2006 that matured into the '977 patent." (Id. ¶ 59)

The '977 Patent consists of three independent claims and several dependent claims that refer to and incorporate the independent claims and add more detail to them. (See id., Ex. 3 ('977 Patent) (Dkt. No. 23-3) at 1-14) As relevant to this case, independent claim 1 concerns

A method for providing an animation in an electronic message, comprising:

capturing from a fixed location a plurality of sequential images;

designating a first image of the plurality of sequential images;

identifying a particular feature shared by the plurality of sequential images other than the first image;

cutting the particular feature from each of the sequential images other than the first image to produce cut images corresponding to each sequential image other than the first image;

superimposing, at a position corresponding to the position of the cut image in the corresponding sequential image, the cut images onto the first image as layers; and

saving, to a memory, the first image and the layers as a web-enabled graphic file.

(Id. at 13)

C.    **'644 Patent**

Count Three of the FAC alleges direct infringement of claims 8, 10, and 12 of the '644 Patent, and indirect infringement of claims 1, 2, 3, 5, and 6 of the '644 Patent. (Id. ¶¶ 65-90) The '644 Patent is "entitled 'Method for Embedding Animation in Electronic Mail and

Websites,'" and "relate[s] to a Method for Embedding Animation in Electronic Mail and Websites . . . and an Electronic Message which contains a Cinemagraph." (Id. ¶¶ 67-68)  The '644 Patent "is part of the same patent family as the '587 patent, and claims priority to the same applications as the '587 patent," as both "the '977 patent and the '587 patent claim priority to the same provisional application No. 60/670,402, filed on Apr. 12, 2005; and the '644 patent is a continuation-in-part of the non-provisional Application No.: 11/586,016, filed on October 25, 2006 that matured into the '587 patent." (Id. ¶ 74)

The '644 Patent consists of three independent claims and several dependent claims that refer to and incorporate the independent claims and add more detail to them.  (See id., Ex. 5 ('644 Patent) (Dkt. No. 23-5) at 1-15)  Claim 1 concerns

> A method for providing animation in an electronic message, comprising:
>
> > capturing a first image of a scene from a particular location using a defined set of photographic parameters;
> >
> > capturing a plurality of images in a sequential order from the particular location using the defined set of photo graphic parameters;
> >
> > defining a sensitivity level corresponding to pixel blocks of the plurality of images;
> >
> > identifying portions of the sequential images that differ from the first image to a degree corresponding to the sensitivity level;
> >
> > cutting the identified portions of the sequential images to produce cut images;
> >
> > superimposing, the cut images onto the first image as layers such that each cut image is displayed in the first image in a position corresponding to the position of the cut image in the corresponding sequential image and displayed in a time sequence corresponding to the timing between corresponding sequential images and the first image; and
> >
> > saving the first image and the layers as a single, web enabled graphic file.

(Id. at 14)

Claim 8 concerns

An electronic message, comprising:

>a single, web-enabled graphic file stored on a memory, the file comprising:

>>a first image of a scene captured from a particular location using a defined set of photographic parameters;

>>a plurality of images captured in a sequential order from the particular location using the defined set of photo graphic parameters;

>>identified portions of the sequential images that differ from the first image;

>>a plurality of cut images corresponding to the identified portions of the sequential images;

>>wherein the cut images are superimposed onto the first image as layers such that each cut image is displayed in the first image in a position corresponding to the position of the cut image in the corresponding sequential image and displayed in a time sequence corresponding to the timing between corresponding sequential images and the first image.

(Id. at 14)

### D. '768 Patent

Count Four of the FAC alleges indirect infringement of claims 1, 4, 7, 15, and 17 of the '768 Patent. (Id. ¶¶ 91-106) The '768 Patent is "entitled 'Embedding Animation in Electronic Mail, Text Messages and Websites,'" and "relate[s] to a Method for Embedding Animation in Electronic Mail and Websites." (Id. ¶ 93-94) The '768 Patent is "part of the same patent family as the '587 patent, and claims priority to the same applications as the '587 patent," as both "the '768 patent and the '587 patent claim priority to the same provisional application No. 60/670,402, filed on Apr. 12, 2005; and the '768 patent is based upon a continuation-in-part of the non-provisional Application No.: 11/586,016, filed on October 25, 2006 that matured into the '587 patent." (Id. ¶ 101)

The '768 Patent consists of three independent claims and a number of dependent claims that refer to and incorporate the independent claims and add more detail to them.  (See id., Ex. 7 ('768 Patent) (Dkt. No. 23-7) at 1-21)

Claim 1 concerns

A method for providing animation in an electronic message, comprising:

capturing three or more images in a sequential order from a location;

receiving data indicating a first image of the three or more images;

designating two or more sequential images of the three or more images that differ from the first image with respect to motion of a user selected element, wherein the motion is detected by comparing the user selected element in the corresponding sequential image with the user selected element in the first image;

identifying two or more blocks of pixels, each block of the two or more blocks of pixels capturing the motion of the user selected element of a corresponding one of the two or more sequential images;

cutting the identified two or more blocks of pixels from the corresponding two or more sequential images to produce cut images;

inserting into the first image the cut images as layers such that each cut image other than a first cut image is layered on a preceding cut image and each cut image is inserted into the first image in a position corresponding to the position of the cut image in the corresponding sequential image; and

saving the first image and the inserted cut images as a single web-enable graphic image file.

(Id. at 20)

Claim 15 concerns

A method for displaying animation in an electronic message, comprising:

receiving an image, the image generated by a method comprising:

capturing three or more images in a sequential order from a location;

receiving data indicating a first image of the three or more images;

designating two or more sequential images of the three or more images that differ from the first image with respect to motion of a user selected element, wherein the motion is detected by comparing the corresponding sequential image with the first image;

identifying two or more blocks of pixels, each block of the two or more blocks of pixels capturing the motion of the user selected element and corresponding to one of the sequential images;

cutting the identified plurality of blocks from the sequential images to produce cut images; and

inserting into the first image the cut images as layers such that each cut image other than a first cut image is layered on a preceding cut image and each cut image is inserted into the first image in a position corresponding to the position of the cut image in the corresponding sequential image; and

saving the first image and the inserted cut images as a single web-enabled graphic image file.

(Id. at 21)

**E.    '998 Patent**

Count Five of the FAC alleges direct infringement of claims 1 through 7 of the '988 Patent and indirect infringement of claims 8 through 14 of the '988 Patent. (Id. ¶¶ 107-132) The '998 Patent is "entitled 'Embedding Animation in Electronic Mail, Text Messages and Websites,'" and "relates to a Method for Embedding Animation in Electronic Mail and Websites (the "Accused Method") and Electronic Messages and Websites which contain a Cinemagraph (the "Accused Product")." (Id. ¶¶ 109-110) The '998 patent "is part of the same patent family as the '587 patent, and claims priority to the same applications as the '587 patent," as both "the '998 patent and the '587 patent claim priority to the same provisional application No. 60/670,402, filed on Apr. 12, 2005; and the '998 patent is based upon a continuation-in-part of the non-provisional Application No.: 11/586,016, filed on October 25, 2006 that matured into the '587 patent." (Id. ¶ 116)

The '998 Patent consists of three independent claims and several dependent claims that refer to and incorporate the independent claims and add more detail to them. (See id., Ex. 9 ('998 Patent) (Dkt. No. 23-9) at 1-20)

Claim 1 concerns

A graphic file stored on a memory, the file comprising:

a first image of a scene captured from a particular location; and

identified portions of a plurality of images that follow the first image captured in a sequential order from the particular location, that differ from the first image, wherein the identified portions are removed and pasted into the first image such that each identified portion is pasted into the first image in a position corresponding to the position of the corresponding cut portion in the corresponding sequential image;

wherein the first image and the identified portions are stored as a single web enabled graphic file; and

wherein the identified portions are identified by comparing the plurality of images to the first image with respect to motion of a user selected element.

(Id. at 19)

Claim 8 concerns

A method for providing animation in an electronic message, comprising:

capturing a first image of a scene from a particular location using a defined set of photographic parameters;

capturing a plurality of images in a sequential order from the particular location using the defined set of photographic parameters;

identifying portions of the sequential images that differ from the first image by comparing the sequential images with the first image with respect to motion of a user selected element;

cutting the identified portions of the sequential images to produce cut images, which are pasted into the first image as layers such that each cut image is displayed in the first image in a position corresponding to the position of the cut image in the corresponding sequential image and displayed in a time sequence corresponding to the timing between corresponding sequential images and the first image; and

saving the first image and the layers as a single web-enabled graphic file.

(Id. at 19)

### III.    PROCEDURAL HISTORY

The Complaint was filed on August 19, 2022, and alleges that Adobe has directly and indirectly infringed on the '587 Patent, the '977 Patent, the '644 Patent, the '768 Patent, and the '998 Patent by marketing and selling images, branded as "Cinemagraphs," on various Adobe websites and software platforms and by inducing users of its software to infringe the patents-in-suit.  (Id. ¶¶ 15-33)

The FAC was filed on December 1, 2022, and adds allegations concerning Adobe's pre-suit knowledge of the patents-in-suit.  (Dkt. No. 23)  The FAC alleges direct infringement of claims 8, 10, and 12 of the '644 patent (id. ¶¶ 73-82) and claims 1-7 of the '998 patent.  (Id. ¶¶ 115-24)  The FAC further alleges indirect and "willful" infringement with respect to all the patents-in-suit under 35 U.S.C. §§ 271(a) and (b), and 284.  (Id. ¶¶ 34-132)

On February 6, 2023, Adobe moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6).  (Def. Mot. (Dkt. No. 32))

### DISCUSSION

### I.    RULE 12(b)(6) STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint.  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of

Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise to right of relief above the speculative level," id. at 555, and a plaintiff's claims must be "plausible on [their] face," Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 570. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in Iqbal) (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).

## II.    DIRECT INFRINGEMENT CLAIMS

The FAC alleges direct infringement of the '644 Patent and the '998 Patent. As discussed above, Plaintiff alleges that – since at least early 2017 – Adobe "has been [directly] infringing on [his]'s patents-in-suit by marketing and selling images that include what Adobe refers to as a 'Cinemagraph.'" (FAC (Dkt. No. 23) ¶¶ 15-18)

Adobe contends that "the FAC does not plausibly allege that Adobe satisfies the first recited elements in either of the asserted independent claims: an 'electronic message' or a 'graphic file.'" (Def. Br. (Dkt. No. 32-1) at 7) Adobe further argues that "the FAC relies on allegations relating to steps performed by users of Adobe software, which cannot plausibly allege infringement by Adobe." (Id. at 26-27 (emphasis in original))

Richardson responds that he "need not prove [his] infringement case in the Complaint[] on an element-by-element basis" (Pltf. Opp. Br. (Dkt. No. 35) at 23 (citing Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1347-54 (Fed. Cir. 2021)); that he has properly pled direct infringement; and that he has "satisfi[ed] [his] notice pleadings requirements under Twombly and the other controlling caselaw." (Id. at 32)

### A.    Applicable Law

"There are 'five elements of a patent infringement [claim:] (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked.'" Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 16 Civ. 885 (JPO), 2017 WL 74729, at *3 (S.D.N.Y. Jan. 4, 2017) (quoting Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed. Cir. 2013)). For system claims, such as the claims at issue here in Counts Three and Five, "a party may be held liable for direct infringement only if the party makes or sells the 'complete invention.'" Medgraph, Inc. v. Medtronic, Inc., 111 F. Supp. 3d 346, 351

(W.D.N.Y. 2015), aff'd, 843 F.3d 942 (Fed. Cir. 2016) (quoting <u>Rotec Indus., Inc. v. Mitsubishi</u>

<u>Corp.</u>, 215 F.3d 1246, 1252 n. 2 (Fed. Cir. 2000)).  "To establish literal infringement, all of the

elements of the claim, as correctly construed, must be present in the accused system."  <u>Netword,</u>

<u>LLC v. Centraal Corp.</u>, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

   "Direct infringement has long been understood to require no more than the

unauthorized use of a patented invention . . . Thus, a direct infringer's knowledge or intent is

irrelevant."  <u>Glob.-Tech Appliances, Inc. v. SEB S.A.</u>, 563 U.S. 754, 761 (2011).

 **B.** <u>**Analysis**</u>

   Richardson brings direct infringement claims for the '644 Patent's independent

claim 8 – which is incorporated in dependent claims 10 and 12 – and for the '998 Patent's

independent claim 1 – which is incorporated in dependent claims 2 through 7.  The FAC alleges

that "Adobe markets and sells images that include what Adobe refers to as a 'Cinemagraph.'"

(FAC (Dkt. No. 23) ¶ 16)  As discussed above, Adobe "may be held liable for direct

infringement only if [it] makes or sells the 'complete invention.'"  <u>Medgraph, Inc.</u>, 111 F. Supp.

3d at 351 (quoting <u>Rotec Indus., Inc.</u>, 215 F.3d at 1252 n. 2).

   In arguing that Plaintiff has not adequately pled direct infringement, Adobe

contends that Plaintiff has not pled facts demonstrating "that Adobe satisfies the first recited

elements in either of the asserted independent claims:  an 'electronic message' or a 'graphic

file.'"  (Def. Br. (Dkt. No. 32-1) at 7)

   Claim 8 of the '644 Patent references "[a]n electronic message."  (FAC, Ex. 6

(Dkt. No. 23-6) at 16)  Adobe argues that the FAC's allegation that "Adobe directly infringes 'by

hosting an electronic message containing cinemagraphs on their website, embedding

Cinemagraphs in electronic communications (email) and on their webpage and . . . selling

[cinemagraphs] using electronic communications containing cinemagraphs from their website'"

is conclusory and cannot serve as the basis for Richardson's direct infringement claim. (Def. Br. (Dkt. No. 32-1) at 26 (quoting FAC (Dkt. No. 23) ¶ 76))  Richardson does not address this argument in his opposition brief.

"[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8 LLC, 4 F.4th at 1353. Here, Richardson has not adequately alleged how Adobe's purported sale of Cinemagraphs constitutes the "making, using, offering to sell, [or] selling" of an "electronic message." (See FAC (Dkt. No. 23) ¶ 75)

Richardson appears to acknowledge in the FAC that an electronic message is akin to an "email" (see id. ¶ 76), which is not a product that Richardson alleges Adobe sells. And while Richardson alleges in his Contentions Claim Chart that a Cinemagraph is a "gif file," and that "such a gif file displayed on a web browser is an electronic message" (see id., Ex. 6 (Dkt. No. 23-6) at 16), this allegation similarly does not pass muster, because Richardson does not explain how the gif file itself constitutes an electronic message.

Analysis of Element 8 of the '644 Patent illustrates the issue with Richardson's argument that a gif file is an "electronic message." Element 8a states that the invention is "[a]n electronic message, comprising:  a single, web-enabled graphic file stored on a memory. . . ." (Id.) If this Court were to credit Richardson's argument, the Cinemagraph – which Richardson characterizes as a "gif file" – would satisfy both the electronic message element and the "web-enabled graphic file" element. This Court concludes, however, that the "electronic message" referenced in Element 8 must be something distinct from the "web-enabled graphic file."

In sum, in order to sufficiently allege direct infringement, Richardson must plead facts showing that Adobe is "making, using, offering to sell, [or] selling" (FAC (Dkt. No. 23) ¶ 75) a product that contains (1) a web-enabled graphic file and (2) an electronic message.  See Noble Sec., Inc. v. ACCO Brands Corp., 16 Civ. 9129 (PGG), 2018 WL 11542581, at *11 (S.D.N.Y. Mar. 31, 2018) (granting motion to dismiss where plaintiff's patent referred to an electronic device in combination with a lock, but the defendant's product was a lock with no connection to an electronic device).  But the FAC does not plead facts showing that Adobe makes, uses, offers to sell, or sells a product that constitutes an "electronic message."  While the FAC alleges that Adobe displays its product on a web browser, the FAC specifies that Adobe "host[s] an electronic message containing cinemagraphs on [its] website."  (FAC (Dkt. No. 23) ¶ 76)  As such, the FAC does not allege that Adobe's product itself is the electronic message.  The FAC instead makes the conclusory assertion that Adobe hosts "an electronic message," which contains the "Accused Products."  (Id.)  Such an allegation is insufficient.

Because the FAC has not alleged how Adobe's product constitutes an electronic message, Plaintiff "ha[s] not alleged sufficient facts to make it plausible that Defendant has directly violated the '[644] Patent."  Noble Sec., Inc., 2018 WL 11542581, at *11.  Accordingly, Adobe's motion to dismiss Richardson's direct infringement claim as to the '644 Patent will be granted.

The analysis is different as to the '998 Patent.  Claim 1 of the '988 Patent begins by stating it is "[a] graphic file stored on a memory."  (FAC, Ex. 10 (Dkt. No. 23-10) at 2) Adobe contends that the FAC "does not plausibly allege that Adobe makes, uses, offers to sell, or sells a 'graphic file stored on a memory.'"  (Def. Br. (Dkt. No. 32) at 23)  In support of this argument, Adobe cites the following language in the '998 Patent:

> The graphic file is then embedded in a web-based format, such as but not limited to, hypertext markup language (html) file, to make the file web-enabled. Those with skill in the computing arts should be familiar with various graphic and web-enabling formats for images such as gif, jpeg and html.

(FAC, Ex. 9 ('998 Patent) (Dkt. No. 23-9) col. 10:41-45)  Adobe goes on to argue that the FAC only complains about "<u>videos</u> in the 'mov' file format," and "the patents do not include <u>any</u> references to <u>any</u> video formats, including 'mov.'"  (Def. Br. (Dkt. No. 32-1) at 28 (emphasis in original))  As such, Adobe contends that the FAC "does not plausibly allege that Adobe makes, uses, offers to sell, or sells a 'graphic file stored on a memory.'"  (Def. Br. (Dkt. No. 32) at 23)

Richardson counters that the FAC alleges that a user "can save their Cinemagraph in many different formats including GIF, QuickTime, .Mov, MP4 and many others."  (Pltf. Opp. (Dkt. No. 35) at 27; FAC, Ex. 10 (Dkt. No. 23-10) at 7)  But Adobe responds that "the potential steps that users may perform cannot plausibly allege direct infringement by Adobe."  (Def. Reply (Dkt. No. 33) at 13)

While it is correct that a user's actions cannot provide a basis for a direct infringement claim, the FAC's assertions regarding infringement are not limited to videos.  The FAC alleges that "Adobe . . . sells <u>images</u> that include what Adobe refers to as a 'Cinemagraph.'"  (FAC (Dkt. No. 23) ¶ 16)  Indeed, the FAC includes a screenshot of a link to an Adobe website that invites users to "[d]ownload Cinemagraph photos, images, and assets." (<u>Id.</u>)  Regardless of what file format a user saves its Cinemagraph in, the FAC adequately alleges that Adobe is selling Cinemagraph images.  And Adobe does not argue that an image file cannot constitute a "graphic file."  In sum, the Court concludes that the FAC adequately alleges that Adobe is selling the Cinemagraph in an image format, thus satisfying the "graphic file" element.

As to Adobe's argument that "the FAC relies on alleged steps that users may perform" (Def. Br. (Dkt. No. 32-1) at 29), "[a] plaintiff is not required to plead infringement on

an element-by-element basis." <u>Bot M8 LLC</u>, 4 F.4th at 1352; <u>In re Bill of Lading Transmission</u>

<u>& Processing Sys. Pat. Litig.</u>, 681 F.3d 1323, 1335 (Fed. Cir. 2012) ("the Federal Rules of Civil

Procedure do not require a plaintiff to plead facts establishing that each element of an asserted

claim is met"). All that is required is that "a complaint place the alleged infringer 'on notice of

what activity . . . is being accused of infringement.'" <u>Lifetime Indus., Inc. v. Trim-Lok, Inc.</u>, 869

F.3d 1372, 1379 (Fed. Cir. 2017) (quoting <u>K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.</u>,

714 F.3d 1277, 1284 (Fed. Cir. 2013)).

The Federal Circuit's analysis in <u>Disc Disease Sols. Inc. v. VGH Sols., Inc.</u>, 888

F.3d 1256, 1260 (Fed. Cir. 2018) illustrates this point:

> This case involves a simple technology. The asserted patents, which were
> attached to the complaint, consist of only four independent claims. The complaint
> specifically identified the three accused products – by name and by attaching
> photos of the product packaging as exhibits – and alleged that the accused
> products meet "each and every element of at least one claim of the '113 [or '509]
> Patent, either literally or equivalently." J.A. 54–55. These disclosures and
> allegations are enough to provide VGH Solutions fair notice of infringement of
> the asserted patents.

<u>Id.</u>

Richardson has similarly met the pleading requirements for alleging direct

infringement of the '998 Patent. While Plaintiff's Claim Contention Chart explains the method

by which a user can create a Cinemagraph, the FAC makes clear that Plaintiff's direct

infringement claim is based – at least in part – on Adobe's sale of Cinemagraphs.[4]

---

[4] To the extent that Plaintiff alleges that Adobe "uses" his patented system (<u>see</u> FAC (Dkt. No. 23) ¶ 17), he has not plausibly alleged a direct infringement claim. As the Federal Circuit has explained, "[t]o "use" [a] system, [a party] must put the claimed invention into service, <u>i.e.</u>, control the system and obtain benefit from it." <u>Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.</u>, 631 F.3d 1279, 1286 (Fed. Cir. 2011). Plaintiff has not pled facts demonstrating that Adobe "uses" his system patent.

As discussed above, in this case Adobe "may be held liable for direct infringement . . . if [it] makes or sells the 'complete invention.'" Medgraph, Inc., 111 F. Supp. 3d at 351 (quoting Rotec Indus., Inc., 215 F.3d at 1252 n. 2)  As such, Richardson need only plausibly allege that Adobe is selling his complete invention, which he has done.  Adobe does not appear to contest that both Richardson's patented invention, the Cinegif, and Adobe's product, the Cinemagraph, are visual files – regardless of format – that "hav[e] an isolated area of motion that draws the viewer's eye to a particular image of the area."  (FAC (Dkt. No. 23) ¶ 10; id. ¶ 16 ("Adobe has been advertising, marketing, and importing into the United States and/or exporting outside of the United States and selling Mr. Richardson's Cinegifs since at least early 2017.  Specifically, Adobe markets and sells images that include what Adobe refers to as a 'Cinemagraph.'"))  Given that the '998 Patent describes that type of visual file, albeit in a more technical fashion, Plaintiff has plausibly alleged direct infringement.  Accordingly, Adobe's motion to dismiss Richardson's direct infringement claim as to the '998 Patent will be denied.

## III.    INDIRECT INDUCED INFRINGEMENT CLAIMS

As discussed above, the FAC alleges that Adobe has "actively induce[d] others to infringe the method claims of the patents-in-suit (the 'Accused Methods') by promoting infringement of the Accused Methods on YouTube and other social media."  (FAC (Dkt. No. 23) ¶ 20)  Plaintiff's indirect induced infringement claims are premised on his assertion that Adobe offers video tutorials that "give[] step by step instructions, encouragement and direction on how to create a Cinemagraph" through the use of Adobe Premiere Pro and After Effects software, and that these tutorials "use and infringe [Plaintiff's] patented technology."  (Id. ¶¶ 21-24)  For example, Adobe has actively marketed a YouTube tutorial that "describes how to make a Cinemagraph using Adobe Premiere Pro."  (Id. ¶ 21)  Richardson alleges that – in marketing its software in this fashion – Adobe has induced users "to infringe the patents-in-suit."  (Id.)

In moving to dismiss, Adobe contends that "the FAC fails to sufficiently plead that any entity performs every step of the asserted method claims, or that Adobe has the specific intent to encourage others to infringe." (Def. Br. (Dkt. No. 32-1) at 7) Adobe further contends that "the FAC does not sufficiently plead Adobe's actual pre-suit knowledge of the patents, or of infringement." According to Adobe, "a single USPTO examiner citation to the '587 Patent is insufficient to show that Adobe had actual knowledge of that patent." (Id. at 6)

Richardson responds that Adobe's customers "perform all of the method steps and are liable as direct infringers of the method claims," and that Adobe indirectly induces infringement by "encourag[ing] the user to perform the 'capturing' step by buying preexisting footage from Adobe," and "by teaching" in its Cinemagraph video tutorial how the "moderator/user of the Adobe software . . . or the viewer [can] perform the "capturing" step by shooting his own video."[5] (Pltf. Opp. Br. (Dkt. No. 35) at 22-24)

## A.    <u>Applicable Law</u>

To state a claim for induced infringement pursuant to 35 U.S.C. § 271(b), plaintiff must demonstrate that the "alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." <u>Vita-Mix Corp. v. Basic Holding, Inc.</u>, 581 F.3d 1317, 1328 (Fed. Cir. 2009). In sum, "[l]iability under § 271(b) 'requires knowledge that the induced acts constitute patent infringement.'" <u>Bill of Lading</u>, 681 F.3d at 1339 (quoting <u>Glob.-Tech Appliances</u>, 563 U.S. at 766).

---

[5] In each of the method claims, the initial steps involve "capturing" one or more "images" "from a particular location," a "fixed location," or a "location." (<u>See</u> '587 Patent (Dkt. No. 23-1) at 15; '977 Patent (Dkt. No. 23-3) at 13; '644 Patent (Dkt. No. 23-5) at 14; '768 Patent (Dkt. No. 23-7) at 20, 21; '998 Patent (Dkt. No. 23-9) at 19)

"A method patent claims a number of steps[,] . . . [and] the patent is not infringed unless all the steps are carried out." Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 921 (2014). "It is [also] axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" Bill of Lading, 681 F.3d at 1333 (emphasis in original). Moreover, if "performance of all the claimed steps cannot be attributed to a single person, . . . direct infringement never occurred." Limelight Networks, 572 U.S. at 921. "Direct infringement under § 271(a) occurs [only] where all steps of a claimed method are performed by or attributable to a single entity." Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015). However, "a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." Bill of Lading, 681 F.3d at 1336 (emphasis in original).

**B.    Analysis**

In moving to dismiss Plaintiff's indirect induced infringement claims, Adobe argues that "the complaint itself cannot supply actual knowledge even for post-suit conduct, and claims must be dismissed in their entirety, for pre- and post-suit conduct, if the complaint does not allege patent knowledge 'prior to the commencement of [the] action.'" (Def. Br. (Dkt. No. 23-1) at 16 (quoting Pfizer, Inc. v. Gelfand, 08 Civ. 2018 (LAK), 2008 WL 2736019, at *1 (S.D.N.Y. July 9, 2008))

In Pfizer, the court addressed defendant's induced infringement counterclaim as follows:

> Plaintiffs seek also the dismissal of the inducement claim against Jarvik and JHI. The counterclaim is devoid of factual allegations against JHI, and defendant's attempt to save that claim against it on the theory that it is Jarvik's alter ego fails in light of plaintiff's failure sufficiently to allege a factual basis for alter ego liability. Likewise, given the absence of any allegation that Jarvik was aware or should have been aware of the '688 patent prior to the commencement of this action, the counterclaim fails to allege facts permitting the inference that Jarvik

21

acted with specific intent to cause direct infringement, an essential element of inducement liability.

Pfizer, 2008 WL 2736019, at *1.

Whatever the circumstances in Pfizer concerning defendant's counterclaim, here Plaintiff has filed an amended complaint and alleged that induced infringement has continued unabated since the original complaint was filed.  (FAC (Dkt. No. 23) ¶ 17)  Given these circumstances, Plaintiff has satisfied the knowledge requirement.

As a general matter, "the filing of a federal complaint identifying the patents-in-suit satisfies the requirement that a plaintiff plead a defendant's knowledge of the patents-in-suit." Carson Optical Inc. v. eBay Inc., 202 F. Supp. 3d 247, 254 (E.D.N.Y. 2016); see also Smartwater, Ltd. v. Applied DNA Scis., Inc., 12 Civ. 5731 (JS) (AKT), 2013 WL 5440599, at *8 (E.D.N.Y. Sept. 27, 2013) ("'in this Circuit at least, prefiling knowledge of the patents is not essential to a claim of induced infringement.'" (quoting Automated Transactions, LLC v. First Niagara Fin. Grp., Inc., 10 Civ. 00407, 2010 WL 5819060, at *6 (W.D.N.Y. Aug. 31, 2010), report and recommendation adopted, 2011 WL 601559 (W.D.N.Y. Feb. 11, 2011)).  And given that Richardson has filed an amended complaint in which he alleges that Adobe's infringing conduct has continued post-suit (see, e.g., FAC (Dkt. No. 23) ¶ 17 ("Adobe has infringed and continues to infringe the patents-in-suit by using, displaying, selling, offering to sell, importing into the United States or exporting from the United States images with Adobe's Cinemagraphs including Adobe's online images.")), knowledge of the patents-in-suit is established for purposes of continuing conduct.  See Therabody, Inc. v. Tzumi Elecs. LLC, 21 Civ. 7803 (PGG) (RWL), 2022 WL 17826642, at *10 (S.D.N.Y. Dec. 19, 2022), report and recommendation adopted, 2023 WL 6387231 (S.D.N.Y. Sept. 29, 2023) ("service of an earlier complaint can provide the requisite knowledge of the asserted patent in an amended complaint.").  In sum, the Amended

Complaint adequately pleads knowledge of the patents-in-suit, at least for purposes of continuing post-suit infringing conduct.

A plaintiff asserting an induced infringement claim must also allege that defendant had the specific intent to induce infringement. In the FAC, Richardson alleges that Adobe "actively induces others to infringe the method claims of the patents-in-suit . . . by promoting infringement of the Accused Methods on YouTube and other social media." (FAC (Dkt. No. 23) ¶¶ 16, 18, 44, 60, 86, 102, 128) Adobe does not substantively respond to this contention, instead relying on the argument that Adobe was "without knowledge of Plaintiff's patents" and thus "promotional efforts" cannot support a specific intent finding. (Def. Br. (Dkt. No. 32-1) at 20) But Adobe does not address the circumstances here, in which the Amended Complaint asserts knowledge of the patents-in-suit and that Adobe engages in "promotional efforts" that allegedly induce others to commit infringement. Moreover, "[p]roviding instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement." Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 905 (Fed. Cir. 2014).

In sum, if the FAC adequately alleges that Adobe knowingly induced a single entity or individual to infringe the patents-in-suit, then Plaintiff has satisfied each element of an indirect induced infringement claim. The Court considers below whether the FAC adequately pleads the single entity element of an induced infringement claim.

As discussed above, induced infringement claims require an underlying showing of direct infringement by the alleged induced infringers. Bill of Lading, 681 F.3d at 1333. Absent performance of all steps of a method patent, there is no direct infringement and, as a result, no induced infringement. Id.

Here, Plaintiff asserts that Adobe actively induced its customers to infringe Claims 1, and 3-6 of the '587 Patent; Claims 1, 2-6, and 8 of the '977 Patent; Claims 1, 2, 3, 5, and 6 of the '644 Patent; Claims 1, 4, 7, 15, and 17 of the '768 patent; and Claims 8 and 9-14 of the '998 Patent. (FAC (Dkt. No. 23) ¶¶ 44, 60, 86, 102, 128 (emphasis denoting independent claims)) Each independent claim of the patents-in-suit – which the dependent claims all refer to and incorporate – contains a "capturing" method step:

| "Capturing" Steps In Method Claims Asserted For Indirect Infringement | |
| --- | --- |
| '587 Patent, Claim 1 | "capturing a first image of a scene from a particular location using a defined set of photographic parameters"; "capturing a plurality of images in a sequential order from the particular location using the defined set of photographic parameters" |
| '977 Patent, Claim 1 | "capturing from a fixed location a plurality of sequential images" |
| '644 Patent, Claim 1 | "capturing a first image of a scene from a particular location using a defined set of photographic parameters"; "capturing a plurality of images in a sequential order from the particular location using the defined set of photographic parameters" |
| '768 Patent, Claims 1 and 15 | "capturing three or more images in a sequential order from a location" |
| '998 Patent, Claim 8 | "capturing a first image of a scene from a particular location using a defined set of photographic parameters"; "capturing a plurality of images in a sequential order from the particular location using the defined set of photographic parameters" |

('587 Patent (Dkt. No. 23-1) col. 10:7-12; '977 Patent (Dkt. No. 23-3) col. 8:34-35; '644 Patent (Dkt. No. 23-5) col. 10:7-11; '768 Patent (Dkt. No. 23-7) col. 14:12-13, 16:28-29; '998 Patent (Dkt. No. 23-9) col. 14:48-50)

Plaintiff contends that "a video tutorial [uploaded by Adobe that] is linked and incorporated" in his Claim Contention Chart for Claim 1f of the '587 Patent demonstrates that Adobe induces its customers to perform the "capturing" step. (Pltf. Opp. (Dkt. No. 35) at 23;

FAC, Ex. 2 (Dkt. No. 23-2) at 7)[6]  Plaintiff's Claim Contention Chart asserts that "[t]he tutorial describes how the key frame is <u>under</u> the layers of motion," and quotes the following language in the video tutorial regarding the images: "'. . . it's comprised of a few little things we shot on camera and some visual effects overlaid <u>on top</u> of it.'" (FAC, Ex. 2 (Dkt. No. 23-2) at 7 (emphasis in original))

      As discussed below, however, the quoted material from the YouTube video has nothing to do with the "capturing" step, and Claim 1f of the '587 Patent addresses a different step of the method claim.

      In arguing that Adobe's YouTube video induces Adobe's customers to perform the "capturing" step, Plaintiff describes the tutorial as follows:

---

[6]  In his opposition brief (<u>see</u> Pltf. Opp. (Dkt. No. 35) at 23), Plaintiff also appears to reference his allegation in the Claim Contention Chart that "Adobe instructs [its] videographer/photographer[] [customers] to capture a first image of a scene from a particular location." (FAC, Ex. 2 (Dkt. No. 23-2) at 2)  As noted above, Claim 1a of the '587 Patent reads: "capturing a first image of a scene from a particular location." (<u>Id.</u>)  But "a plaintiff cannot assert a plausible claim for infringement under the <u>Iqbal/Twombly</u> standard by reciting the claim elements and merely concluding that the accused product has those elements." <u>Bot M8 LLC</u>, 4 F.4th at 1353.

> When you play the linked tutorial, the moderator, Kevin Burg, begins the lesson, and states:
>
> "In today's tutorial I'm going to walk you through the raw footage I used to make a Cinemagraph and how to use Adobe Stock to add extra animation. . . So this is the Cinemagraph we are creating today. . . . [I]t's comprised of a few little things **we shot on camera**. . . So this is the original raw footage from the red camera . . . **showing all the things we captured**. So this is me setting up the shot of this car . . ."
>
> In addition, on the home page, where Adobe advertises this tutorial, under the YouTube video, it states: "In this tutorial, Kevin Burg shows us behind the scenes of **how he shot** the foundation footage for his Cinemagraph. . ."

(Pltf. Opp. (Dkt. No. 35) at 23 (emphasis in original))  According to Plaintiff, in this tutorial, Burg is teaching "the viewer to perform the 'capturing' step by shooting his own video," and is demonstrating to the viewer how Burg "used a first image (as taught in the tutorial) on the Adobe software to infringe Plaintiff's claim1 of the '587 Patent." (Id. at 24)

Plaintiff's quotes from the video tutorial do not demonstrate that Adobe has induced its customers to perform the "capturing" step.  While the narrator of the video states that he shot some footage, he does not instruct the viewer to do so.  To create either a Cinegif or a Cinemagraph, an individual must begin with an image that has been captured by someone.  But just because an image has been captured by someone does not mean that the person creating the Cinegif or Cinemagraph captured that image.  Indeed, Plaintiff's Claim Contention Chart acknowledges this fact.

In his Claim Contention Chart, and in connection with Claim 1a of the '768 Patent and the "capturing" step, Richardson attaches a screenshot of an Adobe instruction manual stating, "[f]or best results, <u>find</u> a video clip that shows continuous action." (FAC, Ex. 8 (Dkt. No. 23-8) at 2 (emphasis added))  But the patents-in-suit do not refer to "finding a plurality of images" or "choosing a first image of a scene."  They instead specify "capturing."  For this same reason, Richardson's argument that "Adobe encourages the user to perform the 'capturing'

step by **buying** pre-existing footage from Adobe" is unpersuasive.[7]  (Pltf. Opp. Br. (Dkt. No. 35)

at 24 (emphasis in original))

      As discussed above, a plaintiff asserting an induced infringement claim regarding

a method patent must plead facts showing that the defendant has "induce[d] another party to

perform[] every single step in the method."  Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201,

1219 (Fed. Cir. 2014).  Accordingly, Richardson must allege here that Adobe has induced

another entity or individual to "capture" the images, as specified in the patents-in-suits.

Richardson has not done so.  Accordingly, Adobe's motion to dismiss Richardson's claims of

indirect induced infringement of the patents-in-suit will be granted.

## IV.    WILLFUL INFRINGEMENT

      Adobe argues that Plaintiff's claims for willful infringement fail, because the

FAC does not plead facts "showing that Adobe ha[d] [1] a subjective intent to infringe, . . . [2]

pre-suit actual patent knowledge" of the patents-in-suit, or "[3] knowledge of patent

infringement."  (Def. Br. (Dkt. No. 32-1) at 7-19)

      Richardson responds that "Adobe had actual knowledge of the patents-in-suit,

[and] actual knowledge of Richardson's allegations of infringement . . . at least as of the service

of the Summons and Complaint, on August 30, 2022, and knowingly and willfully continues its

infringing activities to date."  (Pltf. Opp. Br. (Dkt. No. 35) at 18)  Richardson further contends

---

[7]  In his opposition brief, Richardson asserts that, "[i]n addition to these instructions there are other tutorials for Adobe After Effects that were not cited [in the FAC] that emphasize how to shoot a cinemagraph[:] 'How to Make Cinemagraphs in After Effects.[']"  (Pltf. Opp. (Dkt. No. 35) at 24)  Material not referenced in a pleading cannot, of course, be considered on a motion to dismiss.  In any event, the tutorial Plaintiff references in his opposition brief is from "rocketstock.com."  There is no indication that rocketstock.com is Defendant's website or that Adobe has any affiliation with that website.  Accordingly, the tutorial cited by Plaintiff in his opposition brief does not demonstrate that Adobe is inducing users to capture images.

that he has sufficiently pled subjective intent to infringe, because "intent may be proven by circumstantial evidence." (Id. at 20)

A.    **Applicable Law**

Under the Patent Act, courts may "increase the damages up to three times the amount found or assessed" in cases of "willful or bad-faith infringement." 35 U.S.C. § 284; Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508 (1964).

"To willfully infringe a patent, the patent must exist and [the accused infringer] must have knowledge of it. Then, a patentee must show by clear and convincing evidence that the infringer acted despite [1] an objectively high likelihood that its actions constituted infringement of a valid patent and [2] that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." Inv. Tech. Grp., Inc. v. Liquidnet Holdings, Inc., 759 F. Supp. 2d 387, 410 (S.D.N.Y.2010) (alteration in original), aff'd sub nom. Liquidnet Holdings, Inc. v. Pulse Trading, Inc., 478 F. App'x 671 (Fed. Cir. 2012) and aff'd sub nom. Liquidnet Holdings, Inc. v. Pulse Trading, Inc., 478 F. App'x 671 (Fed. Cir. 2012).

"To survive a motion to dismiss allegations of willful infringement, a plaintiff in this District 'need only "plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement."'" Therabody, Inc., 2022 WL 17826642, at *5 (quoting Berall v. Pentax of Am., Inc., 10 Civ. 5777 (LAP), 2021 WL 3934200, at *9 (S.D.N.Y. Sept. 2, 2021)) "'[M]ost courts[]' . . . hold that allegations of post-filing willful infringement in an amended complaint may support a claim for willful infringement." Id. at *10.

**B.**     <u>Analysis</u>

Having dismissed Plaintiff's direct infringement claim as to the '644 Patent and

Plaintiff's claims of indirect induced infringement, the Court considers below whether he has

adequately pled willful infringement as to his remaining claims.

As to the '998 Patent and whether Defendant had pre-suit knowledge of it, the

FAC alleges that the '587 Patent was known to Adobe because it was "cited by the US Patent

Examiner during prosecution of [an unrelated Adobe patent]." (<u>Id.</u> ¶ 43)  Plaintiff further alleges

that "Adobe has known, or should have known," of the '587 Patent because the '998 Patent "is

part of the same patent family as the '587 patent, and claims priority to the same applications as

the '587 patent.  Both the '998 patent and the '587 patent claim priority to the same provisional

application No. 60/670,402, filed on Apr. 12, 2005; and the '998 patent is based upon a

continuation-in-part of the non-provisional Application No. 11/586,016, filed on October 25,

2006 that matured into the '587 patent."  (<u>Id.</u> ¶ 116)  In sum, according to Plaintiff, "notice of the

'587 [P]atent to Adobe's patent attorneys provided notice and knowledge of all patent family

members, including the '998 [P]atent."  (<u>Id.</u>)

Adobe responds that the patent examiner's "citation [referenced by Plaintiff] was

not made by Adobe or provided directly to Adobe, as outside counsel prosecuted [the unrelated

patent on Adobe's behalf]."  (Def. Br. (Dkt. No. 32-1) at 17)  According to Adobe, "[a]n

allegation that an examiner cited a patent one time, during prosecution of an unrelated patent,

with no discussion of the patent's subject matter, cannot sufficiently demonstrate actual

knowledge of the asserted patents – particularly when the citation was not even made to the

defendant itself."  (<u>Id.</u> (emphasis omitted))  Adobe further argues that "the FAC pleads no

additional facts for knowledge of the other four patents.  Instead, the FAC only relies on

<u>applications</u> listed in the '587 Patent, as allegedly providing 'notice and knowledge of all patent

family members.'" (Id. at 18 (emphasis in Def. Br.) (quoting FAC (Dkt. No. 23) ¶ 116)) "[T]he '587 Patent <u>does not reference</u> any of the other patents, because it cannot – all four issued <u>after</u> the '587 Patent issued in 2008." (Id. (emphasis in original))

Even assuming <u>arguendo</u> that a patent examiner's mention of the '587 Patent in connection with an unrelated Adobe patent application could establish actual knowledge of the '587 Patent, any such determination would extend apply only to the '587 Patent. Because the '998 Patent was not cited in the '587 Patent, Richardson has not established pre-suit knowledge of that patent. "[K]nowledge of patent applications can show knowledge of nothing more than that a patent was applied for." <u>Verint Sys. Inc. v. Red Box Recorders Ltd.</u>, 14 Civ. 5403 (KBF), 2016 WL 7177844, at *2 (S.D.N.Y. Dec. 7, 2016). And "'[t]he law does not require an investigation; the law requires actual knowledge or its equivalent.'" <u>Therabody, Inc.</u>, 2022 WL 17826642, at *7 (quoting <u>Verint Sys. Inc.</u>, 2016 WL 7177844, at *2); <u>accord</u> <u>Sonos, Inc. v. Google LLC</u>, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022) ("Mere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough"); <u>InVue Security Products Inc. v. Mobile Tech, Inc.</u>, 19 Civ. 407, 2019 WL 5295464, at *4 (D. Or. Oct. 18, 2019) ("knowledge of other similar patents [does not] necessarily imply actual knowledge of the patent-in-suit"). Accordingly, "the Court finds that the [F]AC does not state a claim for willful infringement of the ['998] Patent[] prior to the commencement of this litigation." <u>Therabody, Inc.</u>, 2022 WL 17826642, at *9.

As for post-suit willful infringement, however, "'[t]he notice of infringement provided by the initial complaint supports an inference that any continued infringement by [Defendant] since it was filed has been deliberate. . . . Courts have generally found allegations of deliberate infringement plausible when the alleged infringer was directly confronted with accusations of infringement and decided to continue its activities anyway' whether by a pre-suit

letter or a prior complaint." Id. at *12 (quoting Longhorn Vaccines & Diagnostics, LLC v.

Spectrum Sols. LLC, 564 F. Supp. 3d 1126, 1148 (D. Utah 2021) (collecting cases)). Here,

Plaintiff has alleged in the FAC that Adobe, "despite having knowledge of the '998 Patent,"

"continues to infringe the patents-in-suit," and that this infringement is "knowing, wanton and

willful." (FAC (Dkt. No. 23) ¶¶ 17, 117, 122) Given these allegations in the FAC, Plaintiff has

stated a claim for willful infringement as to the '998 Patent. "While [Adobe] may ultimately

prevail on its infringement defenses, or [Plaintiff] may ultimately fail to prove willful conduct, or

'further development of the facts of this case may reveal that it is not an "egregious case"

justifying enhanced damages,' [Plaintiff] has satisfied [his] burden to plead willfulness at the

pleading stage." Therabody, Inc., 2022 WL 17826642, at *12 (quoting Bobcar Media, 2017 WL

74729, at *6).

## V.    LEAVE TO AMEND

District courts have "broad discretion in determining whether to grant leave to

amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend may properly

be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo

v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182

(1962)). "Where the possibility exists that [a] defect can be cured," leave to amend "should

normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS),

1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing

Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is

dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for

allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,

No. 08 MDL 1963, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).  However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss.  Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011).

While it appears unlikely that Richardson can adequately plead a direct infringement claim as to the '587 Patent or any indirect induced infringement claims, this Court cannot find that it is impossible.  Accordingly, Richardson will be granted leave to move to file a Second Amended Complaint.

## CONCLUSION

Defendant Adobe's motion to dismiss (Dkt. No. 32) is granted as to Plaintiff Richardson's (1) direct infringement and willful infringement claims premised on the '587 Patent; and (2) indirect induced infringement claims.  Adobe's motion to dismiss is otherwise denied.  Any motion for leave to file a Second Amended Complaint will be submitted by **September 24, 2024**.  The proposed Second Amended Complaint will be attached as an exhibit to the motion papers.  Plaintiff Richardson's motion to file an amended opposition brief (Dkt. No. 39) is granted.  The Clerk of Court will terminate the motions. (Dkt. Nos. 32, 39)

Dated: New York, New York
          September 10, 2024                       SO ORDERED.

_____
Paul G. Gardephe
United States District Judge